UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.V.A.V.,<br><br>  Petitioner,<br><br>  v.<br><br>MINGA WOFFORD, et al.,<br><br>  Respondents. | No. 1:25-cv-01763-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Petitioner F.V.A.V.'s[1] ("Petitioner") Amended Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 7.) For the reasons set forth below, Petitioner's Motion is GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a father to two young children, a life partner of 12 years, a church member, taxpayer, construction worker, and a resident of Rochester, New York. (ECF Nos. 7 at 8 and 7-4 at 4.) He is also a citizen of Ecuador. (ECF No. 7 at 9.) In 2023, Petitioner fled violence in Ecuador in search of protection. (*Id.* at 11.) He has applied for asylum in the United States and

---

[1] Petitioner also filed a motion to proceed via pseudonym (ECF No. 3), which the Court will address after Respondents have an opportunity to respond. In the interim, the Court refers to Petitioner by his pseudonym.

1

his case is pending.

In August 2023, when Petitioner arrived to the United States seeking asylum, the United States Department of Homeland Security ("DHS") detained Petitioner at the border. (ECF No. 7 at 10.) DHS released him on his own recognizance provided he comply with certain conditions. (ECF No. 7-7.) Petitioner has complied with all requirements of his release for approximately two years; he has also timely filed his asylum application and has appeared at all required immigration proceedings. (ECF No. 7 at 10.) Petitioner avers he has no criminal history in either the United States or Ecuador. (ECF No. 7-1 at 2.)

Yet, on August 7, 2025, United States Immigrations and Customs Enforcement ("ICE") detained Petitioner. (ECF No. 7 at 11.) As Petitioner recounts his arrest: he was driving his partner to work during early morning commute in Rochester, New York. (*Id.*) It was 7:30 a.m. when "unmarked vehicles with dark tinted windows followed [them]." (*Id.*) At a traffic light, the vehicles and a truck surrounded his car and "[s]everal men, who did not clearly identify themselves as law enforcement, approached and asked for his 'documents.'" (*Id.*) Petitioner tried to explain that he was in asylum proceedings and showed them a notice of his next hearing date on his phone. (*Id.*) But the unidentified men "handcuffed him and took him into custody without presenting a judicial warrant or written authorization." (*Id.*)

Petitioner has been detained for approximately four months without a bond hearing. (*Id.* at 8.) He has been transferred numerous times (including New York, Louisiana, Texas, and Arizona) before ultimately landing in the Mesa Verde ICE Processing Center in California, where he is currently detained. (ECF No. 7-1 at 3.) Petitioner's next immigration hearing is not for another nearly three months on February 20, 2026. (ECF No. 7 at 8.) In his absence, his family is struggling — including his minor son and daughter — emotionally and financially to pay for food and housing. (ECF No. 7-4 at 4.) Petitioner now challenges the constitutionality of his detention and seeks release.

///

///

///

## II. STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III. ANALYSIS[2]

### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has filed the requisite affidavits and notified Respondents via email on December 7, 2025 that he would be filing the motion. (ECF Nos. 2-2 at 2 and 2-3.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

3

extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). Petitioner was released on his own recognizance around August 29, 2023. (ECF No. 7-7.) For nearly two years, he built a life and established a community in Rochester, New York. (ECF No. 7 at 8; *see also* ECF No. 4 (letters of support from pastor, neighbor, and employer).) He lives with his life partner with whom he is raising two young children, a son and a daughter, who are enrolled in elementary school. (ECF No. 7-9.) As described by his pastor, Petitioner "active[ly] participat[es]" in his church community, serving a "substantial role in [the] community," with "ongoing efforts and contributions that have greatly benefited our community." (ECF No. 7-4 at 14.) For nearly two years, Petitioner has maintained stable employment with the same company. (ECF No. 7-4 at 2.) Moreover, Petitioner avers he has complied with all conditions of his release, including compliance with state, local, and federal laws, and all immigration proceeding requirements. (ECF Nos. 7-1 and 7-7.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

4

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was out of custody for nearly two years, had built a life in Rochester, and has complied with all his release conditions.  Despite that, Petitioner has now been detained for over four months without being afforded a bond hearing.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing.  "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community."  *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted).  Petitioner represents he has no criminal history in either the United States or Ecuador, has complied with the conditions of his release, and has attended every immigration hearing.  (ECF No. 7-1.)  Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Indeed, Petitioner claims that the Respondents' own regulations require notice and a pre-deprivation hearing, which they did not provide.  (ECF No. 7 at 15–16.)  And, as this Court stated recently and Petitioner notes, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him.  (*Id.* at 22.)

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted. Accordingly, with respect to his due process claim, Petitioner has shown he is likely to succeed on the merits.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over four months and has been separated from his partner, his two young children, his church, and his community. Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C. Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Petitioner argues that the balance of equities favors Petitioner, because the Government faces no hardship. (ECF No. 7 at 25.) The Court agrees with Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors also weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's Motion for a TRO. (ECF No. 7.)

**IV. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 7) is GRANTED.
2. Respondents must IMMEDIATELY RELEASE Petitioner F.V.A.V. from custody under the same conditions as he was released previously, prior to his August 7, 2025 detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.
4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this order. Respondents shall file responsive papers by **Friday, December 12, 2025**. Petitioner may file a reply, if any, by **Tuesday, December 16, 2025**. The parties shall indicate in their briefing whether they waive hearing. Fed. R. Civ. P. 65(b)(3). In the meantime, a hearing is scheduled for **Wednesday, December 17 at 10:30 a.m.** in Courtroom 2. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.
5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents. Petitioner shall file proof of such service no later than **1:00 p.m. on December 9, 2025.**
6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the Court may allow. Fed. R. Civ. P. 65(b)(4).
7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

1       IT IS SO ORDERED.

2 Date: December 8, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8