1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                                EASTERN DISTRICT OF CALIFORNIA

10

11    F.V.A.V.[1],

12                    Petitioner,                            No. 1:25-cv-01763-TLN-JDP

13

14           v.                                              **ORDER**

15    MINGA WOFFORD, et al.,

16                    Respondents.

17

18           This matter is before the Court on an order to show cause why a preliminary injunction

19    should not issue (ECF No. 9) after granting Petitioner F.V.A.V.'s ("Petitioner") underlying Ex-

20    Parte Motion for Temporary Restraining Order ("TRO") (ECF No. 7).  Respondents filed a

21    response.  (ECF No. 11.)  Petitioner replied.  (ECF No. 14.)  On December 17, 2025, the Court

22    held a hearing on the matter with counsel for both parties appearing.  (ECF No. 15.)  For the

23    reasons set forth below, the Court issues a preliminary injunction.

24    ///

25    ///

26

27    _____

      [1]      On December 17, 2025, after hearing that Respondents did not oppose Petitioner's Motion
28    to Proceed Via Pseudonym (ECF No. 3) and finding good cause, the Court GRANTED
      Petitioner's motion. (ECF No. 15.)

                                                      1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is a father to two young children, a life partner of 12 years, a church member, taxpayer, construction worker, and a resident of Rochester, New York.  (ECF Nos. 7 at 8; 7-4 at 4.)  He is also a citizen of Ecuador.  (ECF No. 7 at 9.)  In 2023, Petitioner fled violence in Ecuador in search of protection.  (*Id.* at 11.)  He has applied for asylum in the United States and his case is pending.

In August 2023, when Petitioner arrived to the United States seeking asylum, the United States Department of Homeland Security ("DHS") detained Petitioner at the border.  (ECF No. 7 at 10.)  DHS released him on his own recognizance provided he comply with certain conditions. (ECF No. 7-7.)  Petitioner has complied with all requirements of his release for approximately two years; he has also timely filed his asylum application and has appeared at all required immigration proceedings.  (ECF No. 7 at 10.)  Petitioner avers he has no criminal history in either the United States or Ecuador. (ECF No. 7-1 at 2.)

Yet, on August 7, 2025, United States Immigration and Customs Enforcement ("ICE") detained Petitioner.  (ECF No. 7 at 11.)  As Petitioner recounts his arrest: he was driving his partner to work during an early morning commute in Rochester, New York.  (*Id.*)  It was 7:30 a.m. when "unmarked vehicles with dark tinted windows followed [them]." (*Id.*)  At a traffic light, the vehicles and a truck surrounded his car and "[s]everal men, who did not clearly identify themselves as law enforcement, approached and asked for his 'documents.'" (*Id.*) Petitioner tried to explain that he was in asylum proceedings and showed them a notice of his next hearing date on his phone.  (*Id.*)  But the unidentified men "handcuffed him and took him into custody without presenting a judicial warrant or written authorization."  (*Id.*)

Petitioner was detained for approximately four months without a bond hearing.  (*Id.* at 8.) He was transferred numerous times (including New York, Louisiana, Texas, and Arizona) before ultimately landing in the Mesa Verde ICE Processing Center in California.  (ECF No. 7-1 at 3.) In his absence, his family struggled — including his minor son and daughter — emotionally and

---

[2]    At the December 17, 2025 hearing, the parties stipulated to the facts provided by Petitioner, as set out in the Court's TRO, and reiterated here.

1    financially to pay for food and housing.  (ECF No. 7-4 at 4.)

2        Petitioner challenged the constitutionality of his arrest and detention.  (ECF No. 7.)  On

3    December 8, 2025, this Court issued a TRO requiring Petitioner's release and further enjoining

4    and restraining Respondents from re-arresting or re-detaining Petitioner absent compliance with

5    constitutional due process.  (ECF No. 9.)  Respondents released Petitioner on December 9, 2025.

6    The Court now determines whether the relief contained in the TRO should continue as a

7    preliminary injunction.

8        **II.    STANDARD OF LAW**

9        For a preliminary injunction, courts consider whether a petitioner has established: "[1] that

10   he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

11   of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is

12   in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

13   must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v.*

14   *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

15       In evaluating a petitioner's motion, a district court may weigh petitioner's showings on

16   the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the

17   hardships may support issuing a preliminary injunction even where the petitioner shows that there

18   are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a

19   likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a

20   petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the

21   balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary

22   injunction.  *Id.* at 1134–35.

23       **III.    ANALYSIS**

24       This Court has already found that Petitioner established a likelihood of success on each of

25   the *Winter* elements sufficient to warrant relief as set forth in the TRO.  (ECF No. 9.)  Because

26   the standard for issuing a TRO is "substantially identical" to the standard for issuing a

27   preliminary injunction (*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

28   (9th Cir. 2001)), the Court incorporates its reasoning from the TRO and need not duplicate its

1    analysis here.

2        Respondents now ask the Court to dissolve its TRO and deny a preliminary injunction.

3    (ECF No. 11.)  Respondents do not challenge Petitioner's arguments as to the *Winter* factors for

4    irreparable harm, balance of equities, and public interest.  (*See id.* at 2.)  Instead, they argue that a

5    new DHS policy dictates that Petitioner is subject to mandatory detention under 8 U.S.C.

6    § 1225(b)(2)(A) ("§ 1225(b)(2)") without a right to a bond hearing.[3]  (*Id.* at 2–3.)  Respondents

7    concede that prior to the policy change 8 U.S.C. § 1226(a) ("§ 1226(a)") applied to Petitioner.

8    (*Id.*)  But now, because DHS has changed their interpretation of the INA, Respondents assert

9    Petitioner is subject to § 1225(b)(2).  (*Id.*)

10       Petitioner responds § 1226(a) should apply to his detention determination, as it did earlier

11   this year.  (ECF No. 14 at 2.)  Nevertheless, Petitioner argues, the Court need not make any

12   statutory determinations because, regardless of which statute applies, Petitioner is entitled to

13   constitutionally fair procedures when he is deprived of his liberty.  (*See generally id.*)

14       The Court addresses each argument.

15       A.    Statutory Due Process: § 1225(b)(2) vs. § 1226(a)

16       The Court begins with well-trodden territory:  Whether § 1225(b)(2) or § 1226(a) governs

17   Petitioner's immigration detention.  The issue turns on whether Petitioner is an applicant "seeking

18   admission."  Section 1225(b)(2) mandates detention during removal proceedings for applicants

19   "seeking admission" and does not provide for a bond hearing.  Section 1226(a) "provides the

20   general process for arresting and detaining [noncitizens] who are present in the United States and

21   eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under

22   § 1226(a), the Government has broad discretion whether to release, parole, or detain the

23

24   [3]      As has been widely discussed, including at the December 17, 2025 hearing, and as
     referenced in Respondents' brief:  On July 8, 2025, DHS issued a new policy stating anyone
25   arrested within the United States and charged with inadmissibility under 8 U.S.C.
     § 1182(a)(6)(A)(i) shall be considered an "applicant for admission" under § 1225(b)(2) and
26   subjected to mandatory detention.  The policy upends the Government's long-standing practice
     that noncitizens living in the United States who may be removed are subject to 8 U.S.C.
27   § 1226(a), which provides broad discretion for release, parole, or detention, and provides
     additional procedural protections.
28

1    individual. *Id.* But § 1226(a) also provides several layers of review and confers "an initial bond

2    hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to

3    present evidence, the right to appeal, and the right to seek a new hearing when circumstances

4    materially change." *Id.* at 1202. Until DHS changed its policy earlier this year, the Government

5    consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who

6    were detained by immigration authorities and subject to removal. *See id.* at 1196. Respondents

7    concede that § 1226(a) applied to Petitioner prior to the policy change. (ECF No. 11 at 3.)

8        Courts have overwhelmingly found DHS's new policy and interpretation unlawful. *See*

9    *e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec.

10    9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4

11    (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across

12    160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista*

13    *Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal.

14    Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*,

15    No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting

16    cases).

17        "These courts examined the text, structure, agency application, and legislative history of

18    [§] 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category

19    that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo*

20    *Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12,

21    2025) (collecting cases). In comparison, "[t]he government's proposed reading of the statute

22    (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between

23    sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous;

24    and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v.*

25    *Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23,

26    2025) (collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-

27    BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (issuing declaratory relief for a

28    nationwide class that the July DHS policy is an improper interpretation of the INA and that class

1    members are entitled to a bond hearing).

2         This Court has already agreed with these well-reasoned and compelling decisions

3    numerous times.  *See, e.g.*, *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL

4    3552841, at *2 (E.D. Cal. Dec. 11, 2025); *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP,

5    2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *cf. F.S.S.M. v. Wofford*, No. 1:25-CV-01518-

6    TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025).  Without new facts, reasoning, or a

7    higher court order finding otherwise, this Court will not reconsider its position from prior rulings.

8         Thus, the Court finds Petitioner is not an applicant "seeking admission" subject to

9    mandatory detention under § 1225(b)(2).  Rather, Petitioner is subject to § 1226(a) and statutorily

10   entitled to the processes conferred by that provision.  *See Rodriguez*, 53 F.4th at 1196.

11   Respondents did not comply with those requirements.  Therefore, as set out in the TRO,

12   Petitioner is likely to succeed on the merits of his claims that Respondents have violated the INA

13   and improperly subjected him to mandatory detention without due process.

14        B.    Constitutional Due Process

15        As Petitioner points out, even if Respondents were correct in their statutory interpretation,

16   Petitioner is still entitled to constitutionally compliant due process when the Government revokes

17   a conferred liberty interest.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process

18   Clause applies to all 'persons' within the United States, including noncitizens, whether their

19   presence here is lawful, unlawful, temporary, or permanent.").  Due process rights extend to

20   immigration proceedings and certainly to detention.  *Id.* at 693–94; *Hernandez v. Session*, 872

21   F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to [detain] non-citizens is always

22   constrained by the requirements of due process.").

23        As set out in this Court's TRO, the *Matthews v. Eldridge* factors demonstrated that

24   Petitioner was entitled to, at minimum, the opportunity to be heard.  424 U.S. 319 (1976).

25   Petitioner was not provided with that baseline protection.

26        Respondents argue the only due process owed to Petitioner is the procedure authorized by

27   Congress via statute and, because § 1225 is silent as to procedural protections, Petitioner is not

28   entitled to notice or a hearing when depriving him of his liberty.  (*See* ECF No. 11 at 3 (citing

1    *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015)).)

2         Respondents' reliance on *Angov v. Lynch* is misplaced.  788 F.3d 893 (9th Cir. 2015).

3    Angov was a Bulgarian citizen who sought asylum at the border — without entering the United

4    States — and he later challenged the outcome of his immigration case under due process.  *Id.* at

5    898.

6         As the Ninth Circuit acknowledges in *Angov*, our immigration laws have long made a

7    distinction between due process owed to noncitizens who have been living in the United States

8    and those, like Angov, who seek constitutional protections at our border.  *See Angov v. Lynch*,

9    788 F.3d 893, 898 (9th Cir. 2015) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958));

10   *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (Noncitizens "who

11   have once passed through our gates, even illegally, are afforded the full panoply of procedural

12   due process protections, and may be expelled only after proceedings conforming to traditional

13   standards of fairness.") (cleaned up); *Zadvydas*, 533 U.S. at 693 ("It is well established that

14   certain constitutional protections available to persons inside the United States are unavailable to

15   aliens outside of our geographic borders. . . . But once an alien enters the country, the legal

16   circumstance changes, for the Due Process Clause applies to all 'persons' within the United

17   States, including aliens, whether their presence here is lawful, unlawful, temporary, or

18   permanent.").

19        Here, Petitioner has been living in the United States for over two years, raising a family,

20   participating in his community and church, paying taxes, and complying with all conditions of his

21   immigration release.  Thus, Petitioner is entitled to "the full panoply" of due process in his

22   detention and immigration proceedings and he must be afforded adequate and fair procedures

23   when deprived of his liberty.  *Shaughnessy,* 345 U.S. at 212.

24        As discussed in the TRO, Respondents did not supply adequate or fair procedural

25   protections.  Petitioner was stopped at a traffic light on his way to work, when he was ambushed

26   by unmarked cars, surrounded by unidentified men, taken from his vehicle and handcuffed –

27   without notice, without explanation, and without a hearing for four months.  These are not the fair

28   procedures mandated by our Constitution when the Government strips a person of their freedom.

Moreover, Respondents have not provided any justification, except for a policy change, for detaining Petitioner, and such a justification is not reasonably related to an accepted detention purpose. *See Hernandez*, 872 F.3d at 981 (finding "[immigration] detention incidental to removal must bear a reasonable relation to its purpose."). "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Id.* at 994. The Government has not issued a final order of removal for Petitioner. Petitioner is not a flight risk. In fact, it is uncontested that he has complied with all the conditions of his release and has appeared at all required appointments. Nor is Petitioner a danger to the community. He has never had a criminal history, which Respondents do not refute. On the contrary, Petitioner supplied affidavits demonstrating he is an asset to his family, work, residential, and church communities.

Respondents did not provide adequate and constitutionally-compliant due process when restraining Petitioner's liberty. To prevent further irreparable harm, the Court issues a preliminary injunction as set forth below.

## IV.    CONCLUSION

IT IS HEREBY ORDERED:

1.    Respondents are ENJOINED AND RESTRAINED from imposing additional restrictions on Petitioner's terms of release, unless such restrictions are determined to be necessary at a pre-deprivation/custody hearing.

2.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice (a minimum of 7 days) and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. Petitioner shall be allowed to have his counsel present at any such hearing.

3.    Within twenty-one (21) days of the date of this Order, the parties shall file a joint status report addressing the parties' plan to proceed with this action. The joint status report

should address, at minimum, whether the conditions of Petitioner's release comply with this Court's order, whether parties anticipate any motions practice, or whether parties believe the habeas petition is moot.

IT IS SO ORDERED.

Date: December 19, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE